**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------
K.K. and V.K., on behalf of A.K.,

         Plaintiffs,

 - against -              **COMPLAINT**

New York City Department of Education,    **08 CV 2025 (MGC)**

         Defendant.
---------------------------------------------------------------

  Plaintiffs, K.K. and V.K., on behalf of A.K., by their attorneys, Mayerson & Associates, as and for their Complaint, alleges and states the following:

 1. Plaintiff A.K., the son of plaintiff K.K. and V.K., is a minor child who has been diagnosed with a serious autism spectrum disorder. A.K. was at all relevant times was and is a student residing within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

 2. Plaintiffs K.K. and V.K. are the parents of A.K. Plaintiffs are residents of the State of New York, residing at all relevant times at an address, in the Bronx, within the New York City Department of Education's Region 1, District 10.

 3. A.K. and his parents K.K. and V.K. are not expressly named herein by their given names because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

4. Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide A.K. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

## THE RELIEF BEING SOUGHT

5. This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3). *See also*, 34 C.F.R. §§ 300.516 and 300.517.

6. This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G). K.K. and V.K., on behalf of A.K. should be awarded attorneys' fees as the substantially prevailing party in a due process hearing for the 2004-2005 school year under New York City Impartial Hearing Office Case Number 58954.

## JURISDICTION AND VENUE

7. This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy. Venue is proper in that plaintiff and defendant both reside in or are situated in this District.

8. Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a disability. The FAPE required under IDEIA will be different for each child, as IDEIA does not accept a "one size fits all" approach.

**FACTUAL BACKGROUND**

9. On or about August 26, 2004, K.K. and V.K., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2004-2005 school year for the cost and expenses of A.K.'s ABA services. A.K.'s parents filed for due process due to the NYCDOE's failure to recommend and provide appropriate home-based services individualized for A.K.'s specialized needs.

10. This case (Case No. 55896) was withdrawn, without prejudice, because of settlement negotiations. The NYCDOE, however, never made an approved and authorized settlement offer and, for this reason, A.K.'s parents re-filed their request on or about April 6, 2005.

11. The evidentiary hearing on this matter took place on May 9 and June 10, 2005. Eric Nachman, Esq., of Mayerson & Associates represented the plaintiff. The NYCDOE contended the related services offered were sufficient and appropriate for A.K. Plaintiffs bore the burden of proof in regards to the appropriateness of the home-based services provided to A.K. pursuant to the Burlington/Carter test for relief.[1]

12. The impartial hearing officer heard testimony from A.K.'s witnesses regarding the appropriateness of the services provided by private providers secured by A.K.'s parents. The NYCDOE offered no testimonial or documentary evidence regarding the claims raised by A.K.'s parents.

13. By "Findings of Fact and Decision" date July 7, 2005, Impartial Hearing Officer Morton A. Cohen, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

substantially prevailing party in this administrative due process proceeding.[2]  Defendant never appealed from this decision, which thus became final and non-appealable on or about August 12, 2005.

## CONCLUSION

14. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of A.K.'s IDEIA administrative due process proceeding, and in this action.  The fees requested herein are entirely reasonable and appropriate because:

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents with autism spectrum disorders, like A.K., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

(e) plaintiffs' attorneys' office has represented children with autism spectrum disorders in numerous states across the nation, and has consulted to families outside of the United States; and

---

[2] A redacted copy of this decision is annexed hereto as Exhibit A.  Please note that exhibits have been redacted to protect the privacy of particular family member's identity.  See ¶ 3.

(f) to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' prevailing rates are reasonable and within the applicable standard.

15. Necessary duties involved with preparing A.K.'s case for administrative due process hearings for the 2004-2005 school year included, but was not limited to: (a) corresponding with plaintiff and A.K.'s service providers; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to A.K.'s claims; (e) scheduling and preparing witnesses to testify at the hearings; (f) settlement negotiations; and (g) developing an effective case presentation for the 2004-2005 school year.

16. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2004-2005 school year in an amount to be set by this Court, at plaintiffs' counsel's prevailing rates.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for the 2004-2005 school year in an amount to be set by the Court, (b) award plaintiffs the attorneys' fees and related costs and disbursements associated with this action in an amount to be set by the Court, and (c) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: February 29, 2008  
      New York, New York  
                                                                                                                 _____  
                                                                                                                Gary S. Mayerson (GSM8413)  
                                                                                                                Mayerson & Associates  
                                                                                                                 330 West 38th Street, Suite 600  
                                                                                                                New York, New York 10018  
                                                                                                                (212) 265-7200 – (212) 265-1735 (fax)

# FINDINGS OF FACT AND DECISION

Case Number:                        58954

NYS Case Identifier Number:   14127

Student's Name:                    A█████K█████

Date of Birth:                        June 18, 1999

District:                               10

Hearing Requested By:         Parent

Dates of Hearing:                 May 9, 2005
                                            June 10, 2005

Hearing Officer:                   Morton A. Cohen Esq.

Hearing Officer's Findings of Fact and Decision                                1

Case No. 58954

---

### NAMES AND TITLES OF PERSONS WHO APPEARED MAY 9, 2005

| | | |
|---|---|---|
| Eric Nachman | Attorney | Parent |
| K████ K████ | Parent | |
| V████ K████ | Parent | |
| Sudha Ramaswamy (Via Telephone) | Principal, Hawthorne School, | |
| Justine Delise (Via Telephone) | Occupational Therapist | Parent |
| Eileen Healy | Chairperson Designee, CSE, District 10 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 10, 2005

| | | |
|---|---|---|
| Eric Nachman | Attorney | Parent |
| K████ K████ | Parent | |
| V████ K████ | Parent | |
| Beth Halligan (Via Telephone) | Speech Pathologist | Parent |
| Virginia Wong (Via Telephone) | ABA Instructor | Parent |
| Marjorie Vilo (Via Telephone) | Occupational Therapist | Parent |
| Vernon Green | Occupational Therapist | Parent |
| Eileen Healy | Chairperson Designee, CSE, District 10 | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    2

Case No. 58954

___

On May 9, 2005, and June 10, 2005, I conducted a hearing as an Impartial Hearing Officer, pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)(3). The hearing was requested by the parents (Exh. 1), to continue the home-based Applied Behavior Analysis (ABA), occupational therapy (OT), and speech and language therapy (SLT), presently being received by their son (Child) during the pendency of this proceeding.

## BACKGROUND

Child is a six-year-old boy, presently attending a 12 month kindergarten program at Hawthorne Country Day School – Manhattan Annex (Hawthorne). Child's classification as autistic is not disputed. His "Health and Physical Development" charts on the Individualized Education Program (IEP) refer to Child as "severely speech impaired," "minimal social interaction," and "severe sensory processing delays which impact his speech, language, fine, gross, and visual skills" requiring repetitive directions and consistent structure to acquire functional skills. (Exh. 2 at 5, 6) The "Academic Performance" page recognizes "global delay." (Exh. 2 at 3) Prior to this year, Child received home-based ABA, 12 hours per week, SLT, 3 x 60 weekly, and OT, 2 x 60 weekly. These services have been continued during the pendency of this proceeding. Child has received services since 2003.

An IEP was issued on August 13, 2004, recommending attendance at Hawthorne, an approved private school for special education, in a class for autistic children, 6:1:2, with related services of occupational therapy, 3 x 30, and speech and language therapy, 3 x 30, weekly.

Child's counsel requested an impartial hearing on August 24, 2004, contending that the IEP is procedurally and substantively inappropriate, and that the IEP should have provided extended day ABA, OT, and SLT.

The initial request for an impartial hearing was withdrawn, pending settlement, and reinstituted on April 6, 2005.

## DEPARTMENT OF EDUCATION POSITION

The Department of Education (Department) contends that Hawthorne is an appropriate placement for Child. At Hawthorne, Child receives ABA services, OT, and SLT, as recommended in the IEP, and that the provision of these services is sufficient for

Hearing Officer's Findings of Fact and Decision 3

Case No. 58954

---

Child to make adequate progress. Any additional home-based services are supplementary to the appropriate education provided at Hawthorne, and are not necessary. (Tr. at 7-8)

**PARENTS' POSITION**

Parents contend that the IEP is not valid, as no general education teacher was present, the CSE meeting was not legally constituted, and therefore should be considered a nullity.

Although placement at Hawthorne is appropriate, the program recommended for Child in the IEP does not address Child's individual needs and does not offer an appropriate education. (Tr. at 8)

The IEP presents annual goals and short term objectives, relating to interaction with adults and sensory cognition, which are not clearly defined and lack mastery levels. There is no mention of annual goals. (Exh. 2, at 7, 8)

Considering Child's age and the extent of his academic delays, Hawthorne is not providing the level of ABA instruction necessary to provide Child with an educational benefit. Additional supplementary SLT and OT are necessary to provide Child with a free appropriate public education (FAPE). (Tr. at 50)

Sudha Ramaswamy (Ramaswamy), Principal of the Hawthorne School, has known Child for three years. She initiated home-based ABA for Child in 2003 (Tr. at 16), and recommends a continuation of home-based services at the level presently in effect. (Tr. at 49) Child needs to be taught play skills that will enable him to learn to manage his time and to work independently. (Tr. at 17)

Ramaswamy details the importance for this child to receive these home-based ABA services:

1. Reinforcement, which is important for ABA (Tr. at 20), of daily routine skills such as toileting and communication. (Tr. at 18)

2. Targeting his academic readiness by reinforcing skills he is learning at school. (Tr. at 21)

3. Targeting his social skills: playing games, taking turns, and waiting. (Tr. at 21)

4. Learning to communicate verbally. (Tr. at 21)

5. Reinforcement of skills is particularly important as Child loses these skills when he has time off from school (Tr. at 21-22) and his misbehavior increases 30 percent. (Tr. at 24)

Ramaswamy states Child has been slow in learning some of his skills, particularly identification of numbers, letters, colors, and objects. (Tr. at 32-33) The repetition is necessary for Child. If he did not have the home-based reinforcement, his academic skills would be lost (Tr. at 34), as well as his social skills. (Tr. at 35)

If not for the parent training, Ramaswamy states Child would regress over the weekends. (Tr. at 41) Parent teaching is extremely important. It enables the parents to apply principles, teach a variety of skills, and maintain the consistency of Child's program. (Tr. at 41) Two hours monthly is adequate for parent teaching. (Tr. at 43)

As explained by Ramaswamy, team meetings are important to ensure consistency of teaching methods and level of difficulty in Child's programs. (Tr. at 42) One hour monthly is adequate for a team meeting.

Virginia Wong (Wong), an ABA instructor, teaches Child, once each week at home, for three hours. She started with Child in September 2004. (Tr. at 104) She works on Child's cognitive, social, and health skills. During the last year, Child has learned to identify objects, letters, numbers, colors, and body parts. (Tr. at 106, 107) Child has developed oral communication to express his desires (Tr. at 106), improved his motor skills to enable him to play (Tr. at 107, 108), and is learning to request and use the bathroom. (Tr. at 105)

Wong feels Child is capable of learning the pre-school readiness skills if given an appropriate amount of ABA instruction. She feels the home-based ABA instruction is absolutely necessary (Tr. at 108) and should be continued. (Tr. at 109)

Occupational therapist, Justine Delise (Delise), has been providing OT to Child. She maintains a sensory gym, which offers sensory input to Child (Tr. at 67) and provides Child with a bigger facility; there is a larger selection of equipment and facilities than can be found in the schools. (Tr. at 61) Child has been progressing since he started with her. (Tr. at 63-66)

Vernon Green (Green), an occupational therapist, has known Child for two years, and currently works with Child one hour per week. (Tr. at 115, 116) Green states that

Child has difficulty processing sensory skills. In frustration, Child often misbehaves. (Tr. at 115) He works with Child after school to develop Child's fine and gross motor skills. (Tr. at 116) He employs a large ball, swings, and climbing ropes, to increase Child's skills. (Tr. at 125, 126) In addition, he works to help Child coordinate usage of both Child's hands at the same time. (Tr. at 116) Green believes that Child needs to have some "playground" activities and needs to have a sensory approach to his therapy. (Tr. at 117) Child needs to be exposed to different textures and sounds. (Tr. at 117) Therapeutic brushing is necessary to calm Child. This enables Child to better concentrate on a single activity and is necessary to facilitate transition from one activity to another, thereby enabling Child to do different activities in one session. (Tr. at 119) Green has spoken to Marjorie Vilo (Vilo), Child's occupational therapist at Hawthorne, to coordinate their therapies to benefit Child. (Tr. at 117) Green believes that his efforts have enabled Child to make significant improvement during the last year. (Tr. at 116, 119, 120) The OT services at the school are lacking (Tr. at 121, 125) and he recommends a continuation of outside OT services. (Tr. at 123, 128)

Vilo testified that she concentrates on the fine motor skills that Child needs to help his school work. (Tr. at 130, 132) Primarily, these are "table top" skills. (Tr. at 117) Vilo states that "75%" of Child's occupational therapy needs are not being provided at Hawthorne. (Tr. at 131, 133) The school lacks the equipment and supplies that are necessary for Child. (Tr. at 133) She is unable to address Child's sensory needs due to a lack of materials, does not work on large motor skills, and does not have the time to provide Child with the services he needs. (Tr. at 132) She feels it is absolutely necessary that Child receive occupational therapy outside Hawthorne to ensure success in her work with Child. (Tr. at 136, 137)

Beth Halligan (Halligan), a speech pathologist, has known Child since October 2002. (Tr. at 86) She sees Child 3 x 1 weekly out of school. (Tr. at 88) Halligan diagnoses Child as having severe apraxia, a difficulty in motor planning; the brain does not signal the muscles to act. (Tr. at 88, 92)

Child is currently being taught by PECS (picture exchange communication system). Using a series of icons, Child is taught to communicate by pointing at the pictures and this will help him to then attempt oral communication. (Tr. at 90) To ease

oral communication, Halligan employs PROMPT, a massaging of the muscles near the jaw that assists Child to articulate (Tr. at 87), a method not being employed at Hawthorne.

Child's teacher at Hawthorne was a student of Halligan. (Tr. at 89) Halligan is in touch with her, discusses Child's treatment, and is familiar with Child's program at Hawthorne. (Tr. at 89) Halligan believes that, partly due to the inexperience of Child's teacher, Child is not receiving the SLT he needs. (Tr. at 97, 99) There has been improvement in the last year. Child is progressing in his letter and word recognition; hopefully, PECS will no longer be used with Child. (Tr. at 91) Child is now capable of saying "I want…" and "give me …". Prior to this year, Child could not say his name due to the inability to pronounce the sound "k." He can now say his name and is beginning speech. (Tr. at 93, 94)

Halligan states that Child's improvement this year is due to her efforts and that a continuation of home-based SLT is necessary, including teaching the parents, a very necessary part of Child's instruction. (Tr. at 91, 95, 100)

**FINDING OF FACT AND CONCLUSIONS OF LAW**

A board of education bears the burden of demonstrating the appropriateness of the program recommended by its CSE (Matter of Handicapped Child, 22 Ed. Dept. Rep. 487; Application of a Child Suspected of Having a Disability, Appeal No. 93-9; Application of a Child with a Handicapping Condition, Appeal No. 92-7). To meet its burden, respondent must show that its recommended program is reasonably calculated to confer educational benefits (Board of Educ. v. Rowley, 458 U.S. 176 [1982]). The recommended program must also be provided in the least restrictive environment (34 C.F.R. §300.55[b]; 8 NYCRR 200.6[a][1]). An appropriate program begins with an IEP which accurately reflects the results of evaluations to identify the student's needs, establishes annual goals and short-term instructional objectives related to those needs, and provides for the use of appropriate special education services (Application of a Child with a Disability, Appeal No. 93-12; Application of a Child Suspected of Having a Disability, Appeal No. 93-9).

As noted in the IEP, and consistently stated by all the witnesses, Child has experienced severe delays due to his disability. Yet, the Department offers no witnesses

to establish how their recommended level of services would have addressed Child's special education needs. See <u>Application of a Child with a Disability</u>, No. 02-029.

Parents have presented a succession of witnesses, all personally involved in the provision of services to Child, who are firm in their opinion that the services provided in school are sorely lacking.

Ramaswamy and Wong, Child's ABA instructors, agree that Child needs additional ABA instruction after school to enable him to receive an educational benefit and maintain academic performance. Their compelling, credible testimony as to the necessity for this particular student to have home-based ABA, parent teaching, and team meeting is uncontroverted. I find that Child and his parents need these home-based ABA and related services for Child to continue his success in school.

Occupational therapist Green is no less insistent in his position that Child needs additional OT outside Hawthorne. His credible testimony, that Child's educational needs are not being met in school, is corroborated by Child's in-school occupational therapist, Vilo, who maintains that Child is not receiving 75% of his OT needs at Hawthorne due to a lack of materials and time. Child's occupational therapy, designed to deal with Child's misbehavior, focus, coordination, and task transition, are essential to his improvement. Clearly, Child needs additional outside OT services.

Speech pathologist, Halligan, credibly relates the need for home-based SLT and parent training. The ability to communicate vocally is essential for Child to succeed in school. The severity of Child's condition, apraxia, requires the methodology employed by Halligan, PROMPT, to enable Child to make known his needs, desires, and eventually to communicate his thoughts and ideas.

Child's ABA instructors, occupational therapists, and speech pathologist, attribute the progress made by Child this past year, in their respective disciplines, to their own efforts, not the instruction Child has received at school. The Department does not allege otherwise. I find that the continued home-based services are an essential part of Child's education, necessary for him, not to achieve his full potential, but to receive any educational benefit from his school-based instruction.

Hearing Officer's Findings of Fact and Decision                                     8

Case No. 58954

---

Having determined that the educational needs of this child warrant a significant amount of support via a variety of home-based services, it is Ordered:

**ORDER**

1.  The home-based services presently being provided to Child during the pendency of this proceeding shall continue and be funded by the Department until the conclusion of the 2004-2005 school year.

2.  The Department shall convene its CSE within 30 days, in accordance with the requirements of federal and state regulations, and shall timely issue an IEP for Child, that adequately addresses Child's special education needs for the 2005-2006 school year, consistent with the following recommendations, including appropriate short-term objectives and annual goals.

In addition to the ABA, OT, and SLT services presently provided in school, Child shall also continue to receive the following home-based services, to be funded by the Department during the 2005-2006 school year:

   a. Twelve (12) hours weekly of ABA services;

   b. Two (2) hours monthly of parent training in ABA services;

   c. One (1) hour monthly for team meeting to coordinate ABA instruction;

   d. Three (3) sessions weekly, one hour duration each, of speech and language therapy;

   e. Two (2) sessions weekly, one hour duration each, of occupational therapy.

Dated: July 7, 2005

MORTON A. COHEN, ESQ.
Impartial Hearing Officer

MAC:ds

Hearing Officer's Findings of Fact and Decision                                    9

Case No. 58954

---

### **PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Findings of Fact and Decision                                    10

Case No. 58954

---

## DOCUMENTATION ENTERED INTO RECORD

1. Request for Impartial Hearing, 04/06/05, 4 pp.

2. IEP, 08/13/04, 13 pp.

3. Recommendation Report, 08/10/04, 1 p.

4. Recommendation Report, 08/04/04, 1 p.

5. Occupational Therapy Report, 03/07/04, 2 pp.

6. Speech Language Progress Report, 02/04/04, 4 pp.

7. Educational Evaluation, 01/26/04, 4 pp.

8. 12 Month Rationale, 01/26/04, 1 p.

9. Speech/Language Update, 01/20/04, 2 pp.

10. Social History Update, 01/12/04, 2 pp.

11. Psychological Evaluation, 03/14/03, 10 pp.

12. Speech/Language Evaluation, 03/14/03, 6 pp.

13. Speech/Language Progress Report, 02/04/05, 5 pp.

14. Occupational Therapy Progress Report, 02/04/05, 2 pp.

15. Educational Summary, 01/01/05, 7 pp.

16. Speech & Language Quarterly Report, 02/04/05, 4 pp.